[No. 16507.  Department Two.  July 29, 1921.]

CONTINENTAL TRADING COMPANY, *Appellant*, v. SEATTLE NATIONAL BANK *et al., Respondents.*[1]

SALES (77, 82)—EVIDENCE (104)—HEARSAY—EXCUSE FOR FAILURE TO DELIVER.  In an action by a trading company for the return of a deposit of money made by it to secure a contract of sale and delivery of one hundred tons of Chinese peanuts to be shipped from Japan within specified dates, which it alleged it was excused from performing under the boycott and strike provisions of the contract, it is incompetent, upon an issue as to the existence of a boycott in Chinese ports against loading vessels carrying the Japanese flag, to offer the testimony of one who had not been within four hundred miles of the Chinese port from which the shipment was to be made, or letters and telegrams from correspondents in Japan referring to the boycott and its effect on the proposed shipment, based upon reports and hearsay, and not under oath; none of the evidence going to the fact that the particular shipment from China to Japan was prevented by the boycott or strike.

Appeal from a judgment of the superior court for King county, Jurey, J., entered October 18, 1920, in favor of the defendants, notwithstanding the verdict of a jury rendered in favor of the plaintiff, in an action on contract.  Affirmed.

*Flick & Paul,* for appellant.

*Bausman, Oldham, Bullitt & Eggerman,* for respondents.

TOLMAN, J.—On June 17, 1919, appellant's assignors, Brown & Mahoney, Ltd., a copartnership, entered into a written agreement with respondent, National Importing & Trading Company, Incorporated, for the sale and delivery of one hundred tons of Chinese shelled peanuts, of certain specified quality, to be shipped from Japan during June, July and August, 1919.  Among the conditions set forth in the contract was the following:

[1]Reported in 199 Pac. 743.

"The sellers and suppliers, their agents and principals shall not be under any obligations under this contract if the performance thereof is prevented or impeded either wholly or in part by strikes or the effects thereof; lockouts of workmen, fire, riots or disturbances local or otherwise; stoppage or obstruction of navigation or railways or interruption or shortage of transportation of any kind whatsoever; act of God, force mejeure, restraints of Princes, Rulers, or peoples; requisitioning, loss of or delay to steamers relied on by the sellers as likely to be available for service under this contract; licensing rules or other regulations or directions of embargoes or restrictions of any government or any department of any government or any person acting or purporting to act with authority of any government. If the cargo described in this contract is detained or delayed at the point of original shipment, the contract is not to be invalidated and the sellers not to be held responsible."

At the time of the execution of the contract, the sellers therein named deposited with the respondent Seattle National Bank $4,625 as security for the faithful performance of the contract and the delivery of the peanuts within the time limited. The time for delivery was afterwards extended to October 30, 1919, and no delivery having then been made, on November 3, 1919, upon demand of the National Importing & Trading Company, the bank paid to it the amount so deposited. Brown & Mahoney, Ltd., having assigned to appellant all their rights therein, appellant, as plaintiff, brought this action against the bank and the importing company to recover the amount so deposited with the bank and paid over to the importing company, alleging in its complaint:

" . . . that said peanuts could not be shipped out of China, by reason of the existence of a well established and effective boycott which was designed and intended to obstruct and stop all trade relations between

the peoples of China and those of Japan, and that said boycott was originated by the peoples of China on or about July 1, 1919, and was put in immediate effect and has been ever since of such character that it was entirely impossible to ship out of China any goods that had for their transhipment place any point in Japan, or which goods were in anywise to be delivered to a Japanese agent, broker, shipper or carrier, or through such race to others.

"That the cargo herein referred to was duly at hand at Tsingtau in ample time for shipment as contemplated by said contract, excepting as hereinafter qualified, but that it was during all times from July on, and is now being detained and delayed at said point of original shipment by reason of said boycott, and obstructed as herein just recited."

The case was tried to a jury, which found a verdict in favor of appellant for the full amount sued for. A motion on behalf of both respondents for judgment notwithstanding the verdict was interposed and granted, from which judgment appellant prosecutes this appeal.

It was contended and sought to be shown that, though the contract calls for shipment from Japan, it was well known to the trade generally and to the importing company that the peanuts must first be shipped from China to Japan, and that shipment could not be made from China because of the boycott pleaded. It may be a debatable question whether, under the terms of the contract calling for shipment from Japan, the boycott in China would be an excuse for the non-shipment; but however that may be, we think the judgment of the trial court was right, because of the absence of any competent evidence in the record that such boycott in fact existed at the Chinese port of shipment, or, if so, that it was of sufficient force or effectiveness to prevent this particular shipment. The

evidence introduced by appellant, and upon which it relies upon this point, consists of the testimony of a Mr. Priestley, who was in China during the early summer of 1919, but who left there early in July, and was not at any time in that year within four hundred miles of Tsingtau, the port from which it was claimed the peanuts were to be shipped; had no personal knowledge of conditions there at any time during the year, and, of course, no personal knowledge of conditions anywhere in China after his departure. He testified that the boycott existed in Shanghai which applied only to Japanese goods and Japanese vessels and was of varying degrees of severity, according to the class of commodities affected, but did not attempt to say in what class peanuts fell, or whether they were affected in any degree by the boycott. He further testified that the Chinese coolies were largely unable to read, knew nothing of manifests or shipping bills, and judged only by the flag, refusing to load or unload vessels carrying the Japanese flag, and that an American firm would have no difficulty on account of the boycott in loading a shipment, unless it was known that it was acting in the interest of the Japanese. Since the time for shipment specified in the contract was June, July and August, and was afterwards further extended, this testimony falls far short of showing such a prevention or impeding of the shipment as is contemplated by the excusatory clause of the contract.

Appellant also introduced, over respondents' objections, certain letters and cablegrams from its Japanese correspondents, referring to the boycott and its effect on the proposed shipment, which, since the writers were not under oath or subject to cross-examination, and since the statements made in these communications were based on reports or hearsay and not upon

personal knowledge of the writers, cannot be deemed any evidence upon the point now under consideration; nor can the testimony of the witnesses Ogurra and Fujimori, based entirely upon these communications and like information, be considered any evidence of conditions existing at the Chinese port of shipment. We quite agree with the views expressed by the trial court in granting the motion for judgment *non obstante*. He said:

"Then the burden was upon the plaintiff to prove by competent evidence that the boycott or strike did in fact prevent this particular shipment from Tsingtau to Japan. This burden the plaintiff has not sustained.

"It is not a case of sufficiency of the evidence but a case of no competent evidence to sustain it. Plaintiff's sole showing on this question consisted of letters and cablegrams mostly from its own people to the effect that it was impossible to make the shipment on account of the boycott or strike. These were admitted in evidence under the strenuous objection of counsel for defendants and were admitted and I think properly for some special purpose and never to establish the fact of a boycott or its effect upon this particular shipment. It is true some of the documents may appear from the record to have gone in without objection, but unquestionably the objections of counsel for defendants to that character of evidence were broad enough to cover all the documents in question. There were many questions involved in the case where such evidence was competent, such as notice, customs or knowledge of the trade and the like, but a positive fact such as that a boycott or strike not absolute in its effect did in fact prevent a particular shipment cannot be established by such evidence. This alone regardless of any other feature of the case is controlling and conclusive against the right of the plaintiff to recover."

The judgment appealed from is affirmed.

PARKER, C. J., MAIN, MACKINTOSH, and MITCHELL, JJ., concur.